## COLE v. STATE OF INDIANA.

[No. 23,999.	Filed March 31, 1922.]

1. CRIMINAL LAW.— Appeal.— Review.— Harmless Error.— Instructions.—Failure to Distinguish between First and Second Degree Murder.—As the penalty of life imprisonment imposed on defendant on conviction for murder in the first degree was the same as if he had been convicted in the second degree, any error in the failure of the instructions to distinguish between murder in the first and second degrees was harmless. p. 36.

2. HOMICIDE.— Murder in First Degree.— Instructions.— Manslaughter.—On a prosecution for murder in the first degree, there being no evidence tending to prove that, if defendant

robbed and killed deceased, as charged in one count of the indictment, he killed him otherwise than by striking a blow causing death while engaged in the perpetration of a robbery, the court was not required to instruct on manslaughter as regards to the facts charged in that count.   p. 36.

3.  CRIMINAL LAW.—*Instructions.—Applicability of the Evidence.* —An instruction need not be given in a criminal case unless there is evidence to which it is applicable.   p. 36.

.4.  HOMICIDE.—*First Degree Murder.—Killing in the Commission of Robbery.—Intent.—Premeditation.—Malice.*—Killing a person in the commission of the unlawful act of robbing him, is murder in the first degree, although there was no intent to kill, and without reference to premeditation, deliberation or malice.   p. 36.

5.  HOMICIDE.—*Killing in the Commission of Robbery.—Instructions.—Manslaughter.*—The constitutional right of the jury to determine the law and the facts in a criminal case does not impose upon the trial court a duty to instruct on manslaughter with regard to killing in the commission of a robbery, since, while the jury may have power to return a verdict contrary to what it knows to be the law, the court is not required to suggest in giving instructions that it may do so.   p. 37.

6.  HOMICIDE.—*First Degree Murder.—Elements.—Intent.—Killing by Poison.—Killing in Commission of Robbery.*—An intent to kill is an essential element of murder in the first degree by administering poison, where no perpetration, or attempt to perpetrate rape, arson, robbery or burglary is shown, but where the felonious intent to commit robbery and a killing in the perpetration of that crime is proven, it is not necessary to show an intent to kill to prove the accused guilty of murder in the first degree.   p. 37.

7.  CRIMINAL LAW.—*Instructions.—Right of Jury to Determine Law and Facts.*—In a prosecution for murder in the first degree, instructions given *held* to have sufficiently informed the jury of their right to determine the law and the facts.   p. 38.

8.  HOMICIDE. — *First Degree Murder. — Instructions. — Manslaughter.*—In a criminal prosecution, where in two counts of the indictment defendant was charged with murder with premeditated·malice, and in the third count with murder in the commission of a robbery, instructions *held* to have sufficiently declared the law as to manslaughter in event the jury found that the accused killed deceased, but not in the perpetration, or attempted perpetration of a robbery.   p. 38.

From Lake Criminal Court; *Martin J. Smith,* Judge.

Prosecution by the State of Indiana against Ralph

Cole. From a judgment of conviction, the defendant appeals. *Affirmed.*

*McMahon & Conroy,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* for the state.

EWBANK, C. J.—Appellant was charged with murder in the first degree. The jury found him guilty under the fourth count of the indictment, which charged that at Lake county, Indiana, he robbed Erick Johnson of a sum of money and some checks of a value as stated, belonging to said Johnson, and that in perpetrating the crime of robbery appellant killed and murdered Johnson by beating and wounding him with a deadly weapon and blunt instrument, the name and character of which was unknown. The verdict fixed his punishment at imprisonment for life. The only error assigned is overruling the motion for a new trial, and the only specifications in the motion not waived are the giving and refusal of certain instructions.

The first and second counts of the indictment charged that appellant did "unlawfully, feloniously, purposely, and with premeditated malice, kill and murder Erick Johnson" by striking and wounding him with "a certain deadly weapon," the two counts only differing in that the first alleged this weapon to have been a wrench, and the second charged that it was a blunt instrument of unknown name and character.

The witnesses for the state testified that appellant and Erick Johnson were at a gambling house in Gary together for several hours in the early morning of Sunday, October 31, 1920, the day the alleged robbery and murder occurred; that Johnson had a roll of money and some checks; that both were drinking, and appellant engaged in a game of "craps;" that he lost the money he had with him and Johnson cashed checks for him

three different times, in the total amount of $75, and he lost it all; that they left that place together about six o'clock that morning; that before the owner was out of bed they came to the back door of a house several blocks away, the front part of which was used as a pool room and soft drink parlor, while the owner and his family lived in the back part, and were there admitted to the kitchen at twenty minutes past six; that each had two drinks of whisky there, and Johnson exhibited his roll of money and some checks, including one for $25 and one for $50, which latter the appellant, "pretty near crying at the time," said were his checks, also stating that he lost $100 in a game somewhere; that Johnson sent the proprietor to a restaurant for breakfasts for them and himself, and in answer to an inquiry by appellant he told appellant he would be gone ten or fifteen minutes; that he went out through the pool room, leaving the front door unlocked, obtained three breakfasts of ham, eggs, potatoes, bread and butter from a restaurant two blocks away, and returned as soon as the three breakfasts were prepared, which was "maybe fifteen minutes," when he found Johnson alone in the pool room, lying on the floor between the tables, with his pockets empty, a wound on the top of his head at the left side, unconscious, and blood all over the floor; that this wound was made by a blow from something that had a blunt edge and fractured the skull, broke the skin, and drove the hair down into the wound; that appellant had left the house and the front door was locked; that appellant had been working in a garage until the night before, and was not discharged and did not notify his employers that he would quit; that at forty minutes past six that morning appellant called by phone for a taxicab to come for him to an address two or three blocks from the pool room; that a taxicab was driven there immediately and appellant drove in it to

his father's home in Gary, where he got a coat, stopping not more than five minutes, and then drove twelve or sixteen miles to Burnham, across the state line in Illinois, where he stopped at a saloon; that he paid the taxicab fee of $7 out of a $20 bill; that he discharged the taxi early enough that it was back in Gary at 8.05 that morning; that he was arrested in Gary on a charge of grand larceny sixteen days later; and appellant testified on his own behalf that he went from Burnham to Chicago, and from there to Detroit the same afternoon, and a week later to Cincinnati, drinking and gambling at each place; that after three days he went to Dayton, and afterward from there to Chicago, and that same day to Gary on a suburban train, and that he reached his home in Gary, on the evening of November 15, and the police came and arrested him while he was in bed. The uncontradicted evidence was that the place where Johnson was found in a pool of blood and the hospital where he died were both in Lake county, Indiana, and that appellant was rearrested on a charge of murder after Johnson's death.

There was no evidence tending to dispute the inference that Johnson was robbed, or that whoever robbed him struck him on the head as a means of perpetrating the robbery, or tending to show that if he was feloniously killed at all, he was killed in the commission of any other unlawful act except robbery.

The only defense offered was a denial by appellant that he left the gambling house in the company of Johnson, or that he was at the pool room, or that he struck Johnson or took anything from him, or knew of anybody doing so, together with his explanation that he had $75 at home and drove there to get it, and then to Burnham to get some liquor, and went to Detroit and the other cities looking for work, and that he was drunk; and

the testimony of other witnesses that he left the gambling house alone, was seen going in a direction away from the pool room, apparently intoxicated, soon afterward, and other evidence tending to prove an alibi.

The trial court gave instructions of which no complaint is made, to the effect that under the state Constitution the jury were given the right to determine both the law and the facts; that the state must prove beyond a reasonable doubt that Erick Johnson died as the result of the wound received, as alleged in the indictment, and that appellant inflicted it; and that if the jury entertained a reasonable doubt of either of such alleged facts appellant could not be convicted under either count of the indictment; that if the evidence that he was not at the place where Johnson was injured raised such a reasonable doubt the appellant must be acquitted; that if they had a reasonable doubt whether appellant engaged in the robbery of Johnson, and that blows struck while he was perpetrating that crime caused Johnson's death, the verdict must be not guilty, as to the third and fourth counts of the indictment.

In addition to such instructions and others covering other phases of the case, the court gave four instructions of which appellant complains, to the effect that to prove murder in the first degree, as charged in the third and fourth counts of the indictment, intent to kill and premeditated malice need not be shown to have existed, but if the jury were satisfied from all the evidence, beyond a reasonable doubt, that the accused perpetrated a robbery, as alleged, and that while in the perpetration of such robbery he killed Erick Johnson, as charged, then it was the duty of the jury to find him guilty of murder in the first degree; that if the accused should be found guilty under the first or second count of the indictment the jury must determine whether he was guilty of murder in the first degree, or the second de-

gree, or manslaughter, and that a reasonable doubt as to which of said degrees would impose a duty to find him guilty only of the lower degree of those about which the doubt arose; and the correct definitions of murder in the first degree, murder in the second degree and manslaughter were given, with the statement that under counts one and two, the killing must have been done with an intent to kill, accompanied by premeditation, to constitute murder in the first degree, but to constitute manslaughter the killing must have been done without either malice or premeditation, and with an intent to kill arising from a sudden heat of passion, or involuntarily, in the commission of some unlawful act; and this definition was then applied directly to counts one and two of the indictment with a statement that, so applying it, if the jury were satisfied that the accused unlawfully killed Johnson, as charged in counts one and two, but without malice, either voluntarily upon a sudden heat, or involuntarily in the commission of some unlawful act, they should find him guilty of manslaughter.

The objection to these instructions urged by appellant is that they told the jury that appellant could not be convicted of manslaughter if he was found guilty under those counts of the indictment which charged that Johnson was robbed by appellant, and that appellant killed him while perpetrating the robbery. And appellant further complains that the court refused to give three instructions asked by him, to the effect that under "the indictment" the jury might find the accused guilty of murder in the first degree, or in the second degree, or of manslaughter, or might find him not guilty; that if there was a reasonable doubt as to which degree of felonious homicide was proved he could only be convicted of the lowest degree, and that if the jury had a reasonable doubt whether he was guilty of murder or

manslaughter they should find him guilty of manslaughter; all of the requested instructions referring generally to the whole indictment, including the third and fourth counts, as well as the first and second.

The penalty of life imprisonment imposed upon appellant being the same that it would have been if he were convicted of murder in the second degree, 1. any error in failing to distinguish between murder in the first and second degrees, if committed, must be deemed harmless. *McPherson* v. *State* (1912), 178 Ind. 583, 587, 99 N. E. 984.

And there being no evidence whatever tending to prove that the accused, if he robbed and killed Johnson, as charged in the fourth count of the indictment, 2. killed him under any other circumstances than those recited in that count, by striking him a blow which caused his death while engaged in the perpetration of the robbery, the court was not required to instruct on manslaughter in case the jury found the facts charged in that count, unless the Constitution and statutes of Indiana require such an instruction without reference to the nature of the charge or the evidence. *State* v. *Roselli* (1921), 109 Kans. 33, 198 Pac. 195, 198.

That an instruction need not be given in a criminal case unless there is evidence to which it is applicable has been decided by this court. *Harlan* v. *State* 3, 4. (1921), 190 Ind. 322, 130 N. E. 413, 418. And the court has repeatedly decided that killing a person in the commission of the unlawful act of robbing him, is murder in the first degree, although there was no intent to kill, and without reference to premeditation, deliberation or malice, and that the jury might be so instructed. *Moynihan* v. *State* (1880), 70 Ind. 126, 128, 36 Am. Rep. 178; *Stocking* v. *State* (1855), 7 Ind. 326, 331; *Ludwig* v. *State* (1908), 170 Ind. 648, 655, 85 N. E. 345.

The constitutional right of the jury to determine the law as well as the facts in a criminal case does not impose upon the trial court a duty to instruct them

5. that the law of murder and manslaughter is something different from what it has been declared by statute, nor to suggest to the jury that they may decide otherwise than according to law.

The courts of Indiana have long been committed to the doctrine that an intent to kill is an essential element of murder in the first degree by administering

6. poison, where no perpetration or attempt to perpetrate rape, arson, robbery or burglary is shown. *Bechtelheimer* v. *State* (1876), 54 Ind. 128, 134, 136; *Moynihan* v. *State, supra; Hasenfuss* v. *State* (1901), 156 Ind. 246, 252, 59 N. E. 463.

But they are likewise committed to the doctrine that where the felonious intent to commit robbery and a killing in the perpetration of that crime are shown it is not necessary to show an intent to kill in, order to prove the accused guilty of murder in the first degree. *Moynihan* v. *State, supra.*

A jury might have power to stultify itself by returning a verdict contrary to what it knew to be the law, since jurisdiction to decide includes power to de-

5. cide wrong. But the court, when giving instructions, is not required to insult the jurors by a suggestion that they may do so. And since it is clearly the law that if the accused killed the deceased in the perpetration of a robbery he was guilty under the law of murder in the first degree, there was no error in giving instructions to that effect. *State* v. *Young* (1902), 67 N. J. Law 223, 51 Atl. 939; *State* v. *James* (1921), (N. J. Law) 114 Atl. 553, 561, 16 A. L. R. 1141; *People* v. *Chapman* (1918), 224 N. Y. 463, 121 N. E. 381; *People* v. *Schleiman* (1910), 197 N. Y. 383, 90 .N. E. 950, 27 L. R. A. (N. S.) 1075, 18 Ann. Cas. 588; *Sparf*

*and Hansen* v. *United States* (1895), 156 U. S. 51, 103, 106, 15 Sup. Ct. 273, 39 L. Ed. 343; *State* v. *Hopkirk* (1884), 84 Mo. 278, 287; *Strong* v. *State* (1914), 114 Ark. 574, 169 S. W. 1189; *Kirk* v. *Commonwealth* (1921), 192 Ky. 460, 233 S. W. 1060; *State* v. *Fisher* (1917), 54 Mont. 211, 169 Pac. 282. The case of *Hasen-fuss* v. *State, supra,* did not relate to a question of instructions, nor to an indictment for murder done in the perpetration of a robbery.

The instructions given sufficiently informed the jury of their right to determine the law as well as the facts, and sufficiently declared the law as to manslaughter in case the jury should find that the accused killed Johnson, but did not kill him in the perpetration nor attempt to perpetrate a robbery. And if the killing was done in the perpetration of the crime of robbery, as the fourth count charged and the jury found, it could not constitute manslaughter.

The motion for a new trial was properly overruled.

The judgment is affirmed.